**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MOMENTIVE PERFORMANCE**
**MATERIALS USA, INC.,**

                              Plaintiff,

                                v.                                1:07-CV-567
                                                                         (FJS/DRH)

**ASTROCOSMOS METALLURGICAL, INC.,**
**CARBONE LORRAINE EQUIPEMENTS**
**GENIE CHIMIQUE, MERSEN f/k/a LE**
**CARBONE LORRAINE, S.A., and ABC**
**CORPORATIONS 1-10,**

                              Defendants.
_____

**APPEARANCES**                               **OF COUNSEL**

**BRACH EICHLER L.L.C.**                 **ANTHONY M. RAINONE, ESQ.**
101 Eisenhower Parkway
Roseland, New Jersey 07068
Attorneys for Plaintiff

**PODVEY MEANOR CATENACCI**      **THOMAS G. ALJIAN, ESQ.**
**HILDNER COCOZIELLO &**             **JOHN B. COCOZIELLO, ESQ.**
**CHATTMAN P.C.**                         **ROBERT J. MCGUIRE, ESQ.**
One Riverfront Plaza
8th Floor
Newark, New Jersey 07102
Attorneys for Plaintiff

**RIKER DANZIG SHERER HYLAND**   **NEENA BARUA, ESQ.**
**PERRETTI LLP**                         **HAROLD L. KOFMAN, ESQ.**
Headquarters Plaza                    **ANTHONY J. SYLVESTER, ESQ.**
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION[1]**

Currently before the Court are two motions: Defendant Mersen f/k/a Le Carbone Lorraine, S.A.'s ("Mersen") motion to dismiss counts 11 and 12 of the second amended complaint for lack of personal jurisdiction and failure to state a claim and Defendant Carbone Lorraine Equipements Genie Chimique's ("CLEGC") motion for judgment on the pleadings with regard to count 12 of the second amended complaint.

Defendant Mersen[2] is a French holding company organized and existing under the laws of France. Defendant CLEGC, a French company organized and existing under the laws of France, is a subsidiary of Defendant Mersen and a sister company of Defendant AstroCosmos Metallurgical, Inc. ("AstroCosmos").[3]

Count 11 of the second amended complaint alleges that Defendant AstroCosmos is simply the alter ego of Defendant Mersen; and the Court should, therefore, pierce Defendant AstroCosmos' corporate veil and hold Defendant Mersen liable for any liability and damages

---

[1] This case involves the issue of whether or not, under the circumstances, a parent company may be held liable for the actions of its subsidiary by virtue of the parent's alleged influence and control of the subsidiary as well as the parent's purported tortious interference with the subsidiary's contractual obligations.

[2] Mersen f/k/a Le Carbone Lorraine, S.A. formally changed its name from Carbone Lorraine to Mersen in 2009; and, for purposes of this memorandum, the Court will refer to this Defendant as Defendant Mersen. In its pleadings, Plaintiff refers to this Defendant as Carbone Lorraine and Defendants refer to this Defendant as MERSEN.

[3] The parties refer to Defendant AstroCosmos as a subsidiary of Defendant Mersen, but it is more accurately labeled a sub-subsidiary. Indeed, Defendant Mersen owns 100 percent of the common shares of Carbone Lorraine North America, which owns 100 percent of the common shares of Carbone Corporation, which owns 100 percent of the common shares of Defendant AstroCosmos. *See, e.g.*, Declaration of Jerome Sarragozi dated March 31, 2011, at ¶ 18.

imposed against Defendant AstroCosmos. *See* Dkt. No. 74, Plaintiff's Second Amended Complaint, at ¶ 167. Count 12, pled in the alternative to count 11, alleges that Defendants Mersen, CLEGC, and AstroCosmos are a single enterprise and that each entity is responsible for the actions and liabilities of the other. *See id.* at ¶ 200.

## II. BACKGROUND

In 1997, the Silicones business unit of General Electric Company ("GE") issued a request for a proposal to various potential suppliers for the design, manufacture, and installation of a weak acid reactor (the "Reactor") at GE's Waterford, New York facility. *See* Plaintiff's Second Amended Complaint at ¶ 8. Defendant AstroCosmos submitted a proposal, which GE accepted. *See id.* at ¶ 17. GE and Defendant AstroCosmos then executed an equipment purchase agreement dated October 29, 1999 ("Purchase Agreement"). *See id.* at ¶ 18. Plaintiff is the assignee of all of GE's rights, title, and interest in the Purchase Agreement as well as the Silicones business unit of GE. *See id.* at ¶ 21.

Defendant AstroCosmos delivered and installed the Reactor in April or May 2001. *See id.* at ¶ 22. Since its installation in 2001, the Reactor has never functioned according to the terms of the Purchase Agreement and has been shut down on numerous occasions for repair. *See id.* at ¶¶ 24-27. Due to these problems, GE and Defendant AstroCosmos entered into a new agreement (the "Replacement Agreement"); and Defendant AstroCosmos agreed that it would replace the faulty Reactor. *See id.* at ¶¶ 28-37. Plaintiff alleges that, beginning in June 2006, Defendant AstroCosmos violated the terms of the Replacement Agreement in that it refused to fabricate a replacement Reactor and refused to continue its attempt to repair the existing Reactor. *See id.* at

¶¶ 44-46. Plaintiff further alleges that Defendant AstroCosmos acted at the direction and command of Defendant Mersen, Defendant CLEGC and/or other ABC Corporations. *See id.* at ¶ 46.

Defendant Mersen and Defendant CLEGC claim that this case involves a contract dispute between Plaintiff and Defendant AstroCosmos and that neither Mersen nor CLEGC are responsible for Defendant AstroCosmos' purported breach of that contract. *See* Dkt. No. 110, Defendants Mersen and CLEGC's Reply Memorandum, at 12-15.

### III. DISCUSSION

**A.    Defendant Mersen's motion to dismiss counts 11 and 12 for lack of personal jurisdiction**

A federal court sitting in diversity, as in this case, generally applies state substantive law and federal procedural law. *See, e.g., Hanna v. Plumer*, 380 U.S. 460, 465, 471 (1965). As such, the Court looks to New York law to ascertain the standard for determining whether it has personal jurisdiction over Defendant Mersen. To make a "prima facie showing" of jurisdiction, either the company itself must have sufficient contacts with the forum to qualify under the long-arm statute or the subsidiary must be an "agent" or a "mere department" of the foreign parent. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (citations omitted). If there is jurisdiction under New York law, then the Court must evaluate whether the exercise of that jurisdiction comports with the requirements of due process. *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (citation omitted).

A defendant's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction "may, in part, test plaintiff's theory of jurisdiction and, in part, test the facts supporting the

jurisdictional theory." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir. 1999). The plaintiff bears the burden of showing that the court has jurisdiction. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (citation omitted). Here, since "'the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held – "the plaintiff's prima facie showing . . . must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant."'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (quotation omitted). Furthermore, because personal jurisdiction is "'inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion.'" *St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co., Ltd.*, No. 96 Civ. 7269, 1997 WL 357989, *1 (S.D.N.Y. June 26, 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998) (quotation omitted).

In this case, Defendant Mersen contends that it is not subject to personal jurisdiction in New York because jurisdiction cannot be found under §§ 301 or 302 of the New York Civil Practice Law and Rules ("C.P.L.R."), the court's exercise of jurisdiction over it would violate due process, and Plaintiff may not impute Defendant AstroCosmos' New York contacts to it to establish jurisdiction.

New York C.P.L.R. § 301 permits a court to exercise personal jurisdiction over a foreign corporation if it is "'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.'" *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981) (quotation and other citation omitted); *see* N.Y. C.P.L.R. § 301 (McKinney 2003).

Alternatively, a foreign corporation may be subject to jurisdiction in New York pursuant to its long-arm statute, C.P.L.R. § 302. *See* N.Y. C.P.L.R. § 302 (McKinney 2005).

### a. C.P.L.R. § 302(a)(3)

Plaintiff contends that Defendant Mersen is subject to personal jurisdiction under § 302(a)(3). New York's long-arm statute provides, in part, as follows:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> \*   \*   \*
>
> (3) commits a tortious act without the state causing injury to person or property within the state . . . .

N.Y. C.P.L.R. § 302(a)(3) (McKinney 2005).

Plaintiff asserts that it has alleged claims sounding in tort against Defendant Mersen and Defendant CLEGC. Specifically, Plaintiff claims that Ernest Totino — the president of Defendant CLEGC, a member of Defendant Mersen's executive committee, and the manager of Defendant Mersen's chemical equipment division during 2005 and 2006 — tortiously interfered with the Replacement Agreement, the breach of which was ultimately carried out by Defendant Mersen's representatives in New York. Thus, Plaintiff believes that C.P.L.R. § 302(a)(3) serves as grounds for the Court to exercise personal jurisdiction over Defendant Mersen.

C.P.L.R. § 302(a)(3) permits the exercise of personal jurisdiction over a defendant who commits a tort outside the state which causes tortious injury within the state if the defendant

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from

>goods used or consumed or services rendered, in the state, or
>(ii) expects or should reasonably expect the act to have
>consequences in the state and derives substantial revenue from
>interstate or international commerce . . . .

N.Y. C.P.L.R. § 302(a)(3); *see also Cleopatra Kohlique, Inc. v. New High Glass, Inc.*, 652 F. Supp. 1254, 1256-57 (E.D.N.Y. 1987) (finding that a defendant's fraudulent representation constituted a tortious act committed outside New York and causing injury in New York by virtue of the plaintiff's loss of New York customers as a result of this misrepresentation).

Contrary to Defendant Mersen's argument that this is solely a breach-of-contract case, Plaintiff has specifically pled that Mr. Totino and Defendant Mersen's out-of-state activities directed, controlled, and fraudulently interfered with the alleged Replacement Agreement entered in New York, causing injury in New York by virtue of the purported breach thereof. Furthermore, the record sufficiently shows that Defendant Mersen expected or should reasonably have expected those actions to have consequences in New York and that Defendant Mersen derives substantial revenue from interstate or international commerce. *See* N.Y. C.P.L.R. § 302(a)(3)(ii).[4]

Since Plaintiff has averred sufficient facts to show that Defendant Mersen committed a tortious act outside New York causing injury within New York, and Defendant Mersen expected

---

[4] In determining whether there is an injury in New York sufficient to warrant jurisdiction under § 302(a)(3), courts generally apply a "situs-of-injury" test, which asks them to identify "'the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff.'" *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (quotation omitted). "'The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.'" *Id.* (quotation omitted). The alleged injury in this case arises out of Defendant AstroCosmos' purported breach of the Replacement Agreement in New York; accordingly, the place where the underlying, original events took place that caused the alleged injury was New York.

or reasonably should have expected that its actions would have direct consequences in New York and it derives substantial revenue from interstate and international commerce, the Court may exercise personal jurisdiction over Defendant Mersen pursuant to C.P.L.R. § 302(a)(3).

### b. Constitutional basis for personal jurisdiction over Defendant Mersen

In addition to having a statutory basis for exercising personal jurisdiction over a non-resident defendant, the Court must also find that the exercise of jurisdiction comports with principles of due process. *See, e.g.*, *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000) (citation omitted). Such principles are met where (1) the defendants purposefully directed their activities at the forum state; (2) the litigation arose out of the defendants' purposeful activities; and (3) the exercise of jurisdiction comports with principles of fair play and substantial justice. *See Burger King, Inc. v. Rudzewicz*, 471 U.S. 462, 472-77 (1985) (quotations and other citations omitted).

Defendant Mersen is a holding company engaged in the business of managing and investing in other business entities. *See* Declaration of Jerome Sarragozi dated March 31, 2011 ("Sarragozi Decl."), at ¶ 16. Defendant Mersen did not establish Defendant AstroCosmos or select New York as the locus of its business; rather, Defendant AstroCosmos was already in existence and carrying out its business when Carbone Corporation, a wholly owned subsidiary of Defendant Mersen, acquired it in 1997. *See* Declaration of Gerhard Doerr dated March 2011 (*"*Doerr Decl."), at ¶¶ 4-5. Still, this litigation arose out of Defendant Mersen's alleged purposeful in-state activities by, among other things, concocting a phony justification to avoid contract obligations and to violate the alleged Replacement Agreement in New York.

Plaintiff asserts that Mr. Totino and Defendant Mersen directed Defendant AstroCosmos employee, James Fletcher, to fabricate reasons to place the blame on Plaintiff for the reactor failures.[5] Plaintiff's allegations reflect that Defendant Mersen was sufficiently involved with the Replacement Agreement and the purported breach thereof. *See, e.g.,* Plaintiff's Exhs. 74-75, 79. Accordingly, Plaintiff has demonstrated that Defendant Mersen has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

For all these reasons, this Court concludes that it may exercise personal jurisdiction over Defendant Mersen pursuant to C.P.L.R. § 302(a)(3) of the New York long-arm statute and that such exercise of jurisdiction does not violate due process.[6]

---

[5] *See, e.g.*, Plaintiff's Exh. 86 (James Fletcher stating, in an e-mail to AstroCosmos's then-CEO, Joachim Jolitz, and others, "I am game for whatever decision is made in finishing this round of repairs [of the reactor] or not, however I do not have any suggestions to any reasons for walking away from this other than past history success/failures and money's [sic] lost at [AstroCosmos] however I will continue to try and come up with a viable reason to do so"); Plaintiff's Exh. 83 (Mr. Totino telling Mr. Jolitz that, with regard to the reasons for the Reactor failures, "we need more technical arguments . . . . It seems that we cannot avoid the war and no question to change position now, [Defendant] [A]stro[Cosmos] cannot support the cost of a new reactor").

[6] Plaintiff also contends that the Court has personal jurisdiction over Defendant Mersen under C.P.L.R. §§ 301, 302(a)(1), and 302(a)(2). Based on its review of the record, the Court finds that the exercise of personal jurisdiction over Defendant Mersen under these sections of New York C.P.L.R. presents a closer question. However, the Court does not need to decide this issue because § 302(a)(3) clearly provides a basis for exercising personal jurisdiction over Defendant Mersen.

**B.    Defendant Mersen's motion to dismiss counts 11 and 12 for failure to state a claim and Defendant CLEGC's motion for judgment on the pleadings on count 12**

*1. Choice of law*[7]

A federal court in a diversity case must apply the choice of law rules of the forum state. *See Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (citation omitted). This Court, therefore, applies New York choice of law rules.

Courts in New York apply the law of the state of incorporation to determine when the corporate form may be disregarded and liability imposed on shareholders. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1993) (quoting *Fletcher*, 861 F. Supp. at 244 (quoting *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993))). Therefore, unless otherwise agreed to, the general rule is to apply the law of the state of incorporation to claims for piercing the corporate veil.[8] *See, e.g.*, *Wasau Bus. Ins. Co. v. Turner Constr. Co.*, 141 F. Supp. 2d 412, 417 (S.D.N.Y. 2001) (applying Delaware law as the state of incorporation); *Quinn v. Teti*, 234 F.3d 1262, ---, 2000 WL 1616806, *2 n.2 (2d Cir. 2000) (citation omitted); *Fried v. LVI Servs.,*

---

[7] As stated, count 11 applies only to Defendant Mersen and count 12, pled in the alternative to count 11, applies to both Defendant Mersen and Defendant CLEGC. This choice of law analysis applies to both claims.

[8] Although Plaintiff is correct that New York courts do not *automatically* apply the law of the state of incorporation to piercing claims, the circumstances are not such that this general rule should be circumvented in this case. Plaintiff also contends that the application of New York law is proper if there is no material difference between the law of New York and the law of Ohio. *See Elgin Sweeper Co. v. Melson Inc.,* 884 F. Supp. 641, 648 (N.D.N.Y. 1995) (citations omitted). Although it is generally true that the first question the court must answer is whether a conflict actually exists between the law of the two states at issue; and, if not, the court may dispense with a conflicts analysis, this does not appear to be the first inquiry for piercing-the-corporate-veil claims or similar questions of corporate liability for the acts of others. *See, e.g.*, *Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y. 1991); *Wasau Bus. Ins. Co. v. Turner Constr. Co.*, 141 F. Supp. 2d 412, 417 (S.D.N.Y. 2001).

*Inc.*, No. 10 Civ. 9308, 2011 WL 2119748, *5 n.8 (S.D.N.Y. May 23, 2011) (quotation omitted); *In re Saba Enters., Inc.*, 421 B.R. 626, 648-52 (Bkrtcy. S.D.N.Y. 2009) (citations omitted). The parties in the instant case have not consented to the application of New York law, nor has Plaintiff pled that Defendant AstroCosmos or Defendant Mersen has sufficiently significant contacts with New York to require the application of this state's substantive laws.

Since Defendant AstroCosmos was incorporated in Ohio, and since the parties have not consented to the application of New York law to their dispute, New York's choice of law principles warrant the application of Ohio law to Plaintiff's piercing-the-corporate-veil claim. *See Wasau Bus.*, 141 F. Supp. 2d at 417. In addition, as is further discussed below, since Plaintiff's "enterprise liability" claim (count 12) is essentially seeking to impute liability to Defendants Mersen and CLEGC for Defendant AstroCosmos' in-state activities, this same principle applies to that claim. Indeed, "'[b]ecause a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation should be stripped away.'" *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (quotation and other citation omitted).

### 2. Motion to dismiss count 11 for failure to state a claim – applies only to Defendant Mersen[9]

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[9] For purposes of Defendant Mersen's motion to dismiss count 11 for failure to state a claim upon which relief can be granted, the Court accepts Plaintiff's allegations as true.

*Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955 [(2007)]). Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard does not require "detailed factual allegations," but it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must tender more than mere "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).

Ohio courts permit veil-piercing where the shareholder is indistinguishable from, or the "alter ego" of, the corporation itself. *See Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1085 (Ohio 1993) (citation omitted). To do so, a plaintiff must show that (1) control over the corporation by those to be held liable was so complete that the corporation had no mind, will or existence of its own; (2) control over the corporation was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted from such control and wrong. *See id.* at 1086 (citation and footnote omitted).[10]

In count 11, Plaintiff alleges that Defendant Mersen exercised complete domination and

---

[10] This Ohio test is stricter than the standard applied in New York. New York adds "wrongful or unjust act" to the second element, thereby allowing veil-piercing where control was exercised to commit wrongful or unjust acts that do not rise to the level of fraud or an illegal act. *See, e.g.*, *Morris v. New York State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 142 (1993) (citations omitted); *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997) (quotation and other citations omitted). Unlike New York, the Ohio Supreme Court held that the corporate veil may not be pierced under Ohio law for mere wrongful or unjust acts. *See Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506, 513, 895 N.E.2d 538, 545 (2008).

control over Defendant AstroCosmos to commit a fraud or wrong on Plaintiff. *See* Plaintiff's Second Amended Complaint at ¶¶ 164-65. Plaintiff further alleges that Defendant AstroCosmos is the alter ego of Defendant Mersen and would not have breached the Replacement Agreement were it not for Defendant Mersen's domination and control; and, therefore, the Court should pierce Defendant AstroCosmos' corporate veil and hold Defendant Mersen liable for any liability and damages imposed against Defendant AstroCosmos. *See id.* at ¶¶ 166-67.

Other allegations in the second amended complaint are as follows:

All eight companies within the chemical equipment division of Defendant Mersen, including Defendant AstroCosmos and Defendant CLEGC, reported to and were directed and controlled by Mr. Totino. *See id.* at ¶ 141. The sales of all eight companies within the division were directed and controlled by a single division sales director, who was responsible for worldwide sales for the division. *See id.* at ¶ 143. The chemical equipment division sales director was responsible for the manner in which sales occurred, monies were received, and how the product was manufactured and shipped from the division. *See id.* at ¶ 144. All eight companies within the division had a single technology manager for all products involving interactive metals, pressure vessels, and process equipment. *See id.* at ¶ 145. The division coordinated the human resources, finances, and production for the eight companies, including Defendant AstroCosmos and Defendant CLEGC. *See id.* at ¶ 146. A legal affairs group within Defendant Mersen handles and is responsible for all of the corporate activities of Defendant Mersen and its four divisions including, but not limited to, finance, human resources, and legal issues. *See id.* at ¶ 147. Defendant AstroCosmos and Defendant CLEGC do not have their own attorneys but, rather, rely on Defendant Mersen's attorneys. *See id.* at ¶ 148. Defendant

AstroCosmos and Defendant CLEGC are insured for and are being defended against the claims in this lawsuit by a policy of insurance issued to Defendant Mersen. *See id.* at ¶ 149. Each company within the chemical equipment division worked together to produce a profit for the shareholders of Defendant Mersen. *See id.* at ¶ 150.

At all times relevant to this lawsuit, and as early as 2004, Defendant Mersen's "top management" (Mr. Totino and the chemical equipment division sales director, Thierry Nodari, who is also an employee of Defendant CLEGC) were "deeply involved" in the issues arising out of the failed reactor and the Replacement Agreement. *See id.* at ¶ 151. In or around October or November 2005, Defendant AstroCosmos sought and obtained approval from Defendant Mersen through Mr. Totino with regard to the terms of the Replacement Agreement. *See id.* at ¶ 152. Mr. Totino and Defendant Mersen cloaked Gerhard Doerr, the former Chairman and Chief Executive Officer of Defendant AstroCosmos, with the actual, implied, and/or apparent authority to negotiate and enter into the Replacement Agreement and controlled and directed the parameters of the Replacement Agreement terms. *See id.* at ¶ 153. Mr. Totino and Defendant Mersen directed and controlled the negotiations on behalf of Defendant AstroCosmos with the supplier of tantalum cladding services for the replacement reactor, including having direct communications with the supplier. *See id.* at ¶ 154.

Subsequent to the parties agreeing to the Replacement Agreement, Mr. Totino and Defendant Mersen's executive council threatened to "shut-down" Defendant AstroCosmos if it did not succeed in changing the terms of the Replacement Agreement. *See id.* at ¶ 155. In or around March 2006, subsequent to months of the parties' performance of the Replacement Agreement, Mr. Totino and Defendant Mersen orchestrated a scheme to cause Defendant

AstroCosmos to breach the Replacement Agreement and cease its continued performance thereunder even though Mr. Totino and Defendant Mersen were aware at the time that the reactor failures were caused by Defendant AstroCosmos' manufacturing process. *See id.* at ¶ 156. The scheme consisted of Mr. Totino and Defendant Mersen directing Defendant AstroCosmos to request that Plaintiff allow an "expert" from Defendant Mersen to inspect the reactor, in spite of years of inspections and repairs by representatives of Defendant AstroCosmos, under the guise of preparing the design and specifications of the replacement reactor pursuant to the terms of the Replacement Agreement. *See id.* at ¶ 157. In fact, the "expert" was an employee of Defendant Mersen who was at all times directed by Mr. Totino and Defendant Mersen to fabricate reasons to blame Plaintiff for the reactor failures, in spite of years of repeated admissions by AstroCosmos that the reactor failures were caused by Defendant AstroCosmos' manufacturing process. *See id.* Mr. Totino and Defendant Mersen's goal was to provide Defendant AstroCosmos with a reason to abandon the Replacement Agreement, which Defendant Mersen had previously approved. *See id.*

The scheme resulted in the production of an internal report written by an employee of Defendant Mersen and/or Defendant CLEGC, in which he fabricated reasons for Defendant AstroCosmos to place blame on Plaintiff for the Reactor failures. *See id.* at ¶¶ 158-59. Mr. Totino and Defendant Mersen also received test results from an independent third-party demonstrating that the internal report's conclusion — that Plaintiff was partly responsible for Reactor failures — was not supportable by the scientific test data. *See id.* at ¶ 160. Mr. Totino and Defendant Mersen also directed Defendant AstroCosmos employee, James Fletcher, to fabricate reasons to place blame on Plaintiff for the reactor failures in spite of the fact that Mr.

Fletcher had inspected and repaired the reactor for years and had always concluded that the failures were the result of Defendant AstroCosmos' manufacturing process. *See id.* at ¶ 161.

In or around June 2006, notwithstanding that the only information available to Mr. Totino and Defendant Mersen had shown that Defendant AstroCosmos caused the Reactor failures, Mr. Totino and Defendant Mersen directed Defendant AstroCosmos' then-CEO, Joachim Jolitz, to breach the Replacement Agreement by stopping performance thereunder and directed Mr. Jolitz to write a letter to Plaintiff claiming that the reactor failures were a shared responsibility. *See id.* at ¶ 162. Solely at the direction of Mr. Totino and Defendant Mersen, Defendant AstroCosmos breached the Replacement Agreement by failing to complete its contractual obligations. *See id.* at ¶ 163.

Accepting the allegations of the second amended complaint as true and construing them in the light most favorable to Plaintiff, Plaintiff has made a sufficient showing that Defendant Mersen dominated and controlled Defendant AstroCosmos; and, therefore, any fraudulent or tortious act it committed against Plaintiff would allow Plaintiff to pierce the corporate veil. Accordingly, since Plaintiff has averred sufficient facts to state a plausible claim for relief against Defendant Mersen, the Court denies Defendant Mersen's motion to dismiss count 11 for failure to state a claim.

### 3. Count 12 – *applies to Defendant Mersen and Defendant CLEGC*

Plaintiff pleads count 12 based on the theory of "enterprise liability" in the alternative to count 11. Plaintiff contends that Defendants Mersen, CLEGC, and AstroCosmos are a single enterprise and that each entity is responsible for the actions and liabilities of the other in this

case. *See* Plaintiff's Second Amended Complaint at ¶ 200.[11]

### (*a*). *Defendant Mersen*

Defendant Mersen moves to dismiss count 12 against it for, among other reasons, failure to state a claim. This claim is nothing more or less than an effort to pierce the corporate veil under a theory of alter ego liability. *See Walkovszky v. Carlton*, 18 N.Y.2d 414, 417-18 (1966) (treating a claim that sister and parent corporations had no separate existence of their own and acted as part of a larger corporate combine as one sounding in agency liability to pierce the corporate veil). Furthermore, Ohio law does not appear to recognize a claim for "enterprise liability" under these circumstances. Accordingly, count 12 is both duplicative and not a recognized cause of action under controlling Ohio law. For these reasons, the Court grants Defendant Mersen's motion to dismiss count 12.

### (*b*). *Defendant CLEGC*

Defendant CLEGC seeks judgment on the pleadings with regard to count 12 of the second amended complaint. It contends that controlling Ohio law does not allow the imposition of liability upon a corporation (Defendant CLEGC) for the actions of a sister corporation

---

[11] The allegations in count 11 of the second amended complaint are substantively very similar to those in count 12. In sum, Plaintiff alleges that Defendant AstroCosmos and Defendant CLEGC are fragments of a larger corporate combine — namely, Defendant Mersen — which actually conducts the business of the company. *See* Plaintiff's Second Amended Complaint at ¶¶ 169-175, 199. For instance, Plaintiff alleges that the four divisions of Defendant Mersen were merely an internal separation that Defendant Mersen created but which was not apparent to customers and consumers and that the managers of all four divisions reported to Defendant Mersen's management board, which consisted of Mr. Totino and one other person. *See id.* at ¶¶ 170-172.

(Defendant AstroCosmos). It further contends that Plaintiff has not alleged that Defendant CLEGC used any purported dominance over Defendant AstroCosmos to perpetuate a fraudulent, illegal, or similarly unlawful act and thus has failed to plead the required elements of a claim for derivative liability.

Plaintiff argues that Defendant CLEGC should be held derivatively liable for the actions of its sister corporation, Defendant AstroCosmos, under a theory of "enterprise liability" for AstroCosmos' breach of the Replacement Agreement. *See* Plaintiff's Second Amended Complaint at ¶ 200. Plaintiff contends that Defendants Mersen, CLEGC, and AstroCosmos constitute a single enterprise with dozens of production facilities and sales representatives worldwide and, as a single enterprise, each entity is responsible for the actions and liabilities of the other. *See id.* at ¶ 169.

Since Ohio law does not appear to recognize such a claim for "enterprise liability," the Court treats count 12 as another piercing-the-corporate-veil claim. Moreover, the Ohio Supreme Court has expressly held that "a plaintiff cannot pierce the corporate veil of one corporation to reach its sister corporation." *Minno v. Pro-Fab, Inc.*, 121 Ohio St. 3d 464, 468, 905 N.E.2d 613, 617 (2009).[12] Veil-piercing is intended to get at the owners of a corporation; as such, Plaintiff may not pierce Defendant AstroCosmos' veil in order to hold Defendant CLEGC liable for the alleged corporate misdeeds of Defendant AstroCosmos because neither corporation has any ownership interest in the other. Since Defendant AstroCosmos and Defendant CLEGC are

---

[12] Although the instant case is distinguishable from *Minno* because Plaintiff has, in fact, alleged fraud and misuse of the corporate form by the parent corporation, Plaintiff has averred insufficient facts to support a veil-piercing claim against Defendant AstroCosmos' sister company, Defendant CLEGC. Defendant CLEGC did not control Defendant Mersen, which is a necessary element to pierce the corporate veil under an alter ego theory of liability.

indeed sister corporations, the doctrine of piercing the corporate veil is unavailable.

For these reasons, the Court grants Defendant CLEGC's motion for judgment on the pleadings with regard to count 12.

### IV. CONCLUSION

Accordingly, after reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Mersen's motion to dismiss is **GRANTED** as to count 12 and **DENIED** in all other respects; and the Court further

**ORDERS** that Defendant CLEGC's motion for judgment on the pleadings with regard to count 12 is **GRANTED**; and the Court further

**ORDERS** that this case is referred to Magistrate Judge Homer for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: December 13, 2011
      Syracuse, New York

                                        Frederick J. Scullin, Jr.
                                        Senior United States District Court Judge